NEW-YORK PRACTICE REPORTS. **143**

Wisner, by her next friend, agt. Teed and others.

# SUPREME COURT.

WISNER, BY HER NEXT FRIEND, agt. TEED AND OTHERS.

An *answer* containing new matter which does not constitute a *counter claim*, may, nevertheless, be *demurred* to for *insufficiency.* ( *See Salinger agt. Lusk,* 7 *How. Pr. R.* 430, *which holds the same doctrine; and Simpson agt. Loft,* 8 *id.* 234 *; and Roosa agt. Saugerties and Woodstock Turn. Co. id.* 237 *adverse.* )

Where, by the will of the testator, one-sixth part of the real estate vested in one of the son's, subject to the widow's right of dower, which had never been admeasured or set apart; and a judgment against the son having been obtained prior to the death of the testator,—*held,* that on the death of the testator the lien of the judgment upon the son's portion attached *eo instanti;* and it was no answer in an action of partition, to set up that the testator, at the time of his death, held notes and obligations against the son more than sufficient to balance the amount of the son's portion of the property—it not appearing that the amount paid to the son, by the testator, was by way of advancement.

*Livingston Circuit and Special Term, October,* 1853. Demurrer to answer. The action is brought to obtain partition of certain lands in the town of Leicester, in the county of Livingston.

The complaint states, that Pell Teed, late of the town of Leicester, in the county of Livingston, deceased, was in his lifetime seized in fee simple of certain real estate, situated in the town and county aforesaid, describing the same particularly. That said Pell Teed being so seized of the said real estate, died on or about the first day of September, 1851, leaving Achsa Teed, his widow, and Eunice Priest, now the wife of Erastus Priest, Caroline Teed, Minerva Wyman, Pell Teed, jr., Louisa Teed, Fidelia Dinsmore, and Achsa M. Teed, his children, and heirs at law, all of whom, excepting the said Pell Teed, jr., are made defendants in this action.

That the said Pell Teed, before his death, and on the 11th day of August, 1851, executed his last will and testament, by which he devised the said real estate as follows : One undivided third part to his widow, Achsa Teed, and all the rest and residue thereof in equal undivided portions to his said children, which said will has, since the death of the said Pell Teed, been duly proved and recorded.

That on the 27th day of March, 1843, Lewis Benedict re‑ covered judgment against the said Pell Teed, jr., for $192,64, damages and costs, which was duly docketed in the clerk's office of Livingston county, on the 27th day of March, 1843.

That on the 12th day of January, 1852, all the right, title, and interest of the said Pell Teed, jr., in and to the said real estate was sold by the sheriff of Livingston county, by virtue of an execution issued upon said judgment, at which sale the plaintiff became the purchaser of the said real estate, for the sum of $331, being the highest sum bid, &c.

That after the expiration of fifteen months from such sale, and on the 13th day of April, 1853, the plaintiff became seized in fee of the equal undivided sixth part of two-thirds of the said real estate not devised to the said Achsa Teed, widow of the said Pell Teed, the right, title, interest, and undivided share of the said Pell Teed, jr.

That the dower of the said widow, in the said premises, has never been admeasured or in any way set apart to her from the estate of the said Pell Teed, deceased.

The complaint then demands judgment of partition, &c.

Among other defences interposed by the answer is the fol‑ lowing : After setting out the will of Pell Teed, deceased, so far as it relates to the devise of the lands in question, the same as stated in the complaint, and showing that he also bequeathed to Achsa Teed (now his widow) all his household furniture of which he should die possessed, and that the bequest to his children was of all the rest and residue of his estate, both real and personal, after payment of his just debts and funeral charges, to be equally divided between them, share and share alike, denies that the said Pell Teed, deceased, by his last will and testament, disposed of his estate, either real or personal, in any other manner. It then states, that a part of the said per‑ sonal estate so bequeathed to his children consisted of one or more promissory notes or other obligations, executed by the said Pell Teed, jr., to the said Pell Teed, deceased, in his lifetime, for money paid and advanced by said Pell Teed, deceased, in his lifetime, to and for the said Pell Teed, jr., and at his request,

and which at the time of the death of the said Pell Teed, deceased, remained due, and unpaid, and unsatisfied, otherwise than by the said devise and bequest, which said promissory note or notes and obligations amounted at the death of the said Pell Teed, deceased, to more than the sum of one thousand dollars, being more than the one-seventh part in value of the estate so devised as aforesaid to the children of the said Pell Teed, deceased, which said Pell Teed, jr., was at the time of the death of the said Pell Teed, deceased, and still is wholly unable to pay either in whole or in part, except by applying so much of them as the said share of the said estate so devised to him, the said Pell Teed, jr., by the said Pell Teed, deceased, would amount to in satisfaction of his devise or bequest.

To this answer the plaintiff demurs, assigning various causes of demurrer, among which is, that it does not state facts sufficient to bar the plaintiff from maintaining her action.

R. P. WISNER, *for Plaintiff.*
F. TRACY, *for Defendants.*

WELLES, Justice. A preliminary objection is raised by the defendants' counsel, that a demurrer does not lie to an answer unless the answer contains new matter constituting a counter claim, and that this answer does not contain such matter.

The Code (§ 153) provides, that when the answer contains new matter constituting a counter claim, the plaintiff may, within twenty days, reply to such new matter, &c., or he may demur to the same for insufficiency, &c. This is the only provision of the Code allowing, in express terms, a demurrer to an answer, from which it is contended that the answer must amount to a counter claim, in order to authorize the plaintiff to test its' sufficiency by a demurrer. Looking at the section by itself, and regarding its grammatical construction, this view, to say the least, is plausible. I incline, however, to think, in view of other sections, and the evils and inconveniences to which such a construction would lead, that it was not so intended. Section 154 declares, that if the answer contains a statement of new matter,

constituting *a defence*, and the plaintiff fail to reply *or demur* thereto within the time prescribed by law, the defendant may move for judgment. Here a demurrer by the plaintiff is contemplated where the answer contains a defence of new matter, and is not confined to an answer containing a counter claim. I cannot believe that the legislature intended to deprive a plaintiff of the right to demur to an answer setting up new matter, unless the same constituted a counter claim. Such answer could not be struck out on motion, under § 152, unless it was sham or irrelevant, nor under § 160, unless it was irrelevant or redundant, nor under § 247, unless it was frivolous; and if it was neither, and did not in the judgment of the plaintiff state facts sufficient to constitute a defence, which is not an uncommon occurrence, the consequence might be, that the plaintiff, if he could not demur, would be subjected to the delay and expense of going to trial upon an issue of fact, which would determine nothing, and leave the parties just where they were before the answer was put in. Sections 248, 249, 250, and 252, inform us what issues of fact and of law are, and how they arise. § 248 declares that an issue of law arises on a demurrer to the complaint, answer or reply; and § 155 expressly allows a demurrer to a reply. No reason can be conceived for allowing a demurrer to a reply for insufficiency, and not to an answer for the same cause. Indeed, there is no way of testing the sufficiency of either by the court, unless it be sham, irrelevant, redundant, or frivolous, except through a demurrer. Suppose the parties go down to trial upon an answer which the defendant conceives to be insufficient. What, I ask, is there to try at the circuit? Clearly no question of fact, because the plaintiff does not wish to dispute, and does not dispute the facts stated in the answer. There is then nothing to try but an issue of law, which § 248 declares arises on a demurrer to the complaint, answer, or reply, and which, by § 253, must be tried by the court. Yet, in such case, by force of § 168, the answer is to be deemed controverted by the adverse party, and the action goes to trial as an issue of fact, when, in reality, there is no fact in dispute, and the only controversy between the parties is

Wisner, by her next friend, agt. Teed and others.

upon the sufficiency of the answer, and that question must in many cases, by § 253, *be tried* by *a jury.*

I am aware that this question has been involved in some conflict of decision at special terms. In Salinger agt. Lusk, (7 *How. Pr. R.* 430,) Justice BARCULO held that a plaintiff might demur to an answer not containing a counter claim for insufficiency ; and in Simpson agt. Loft, (8 *How. Pr. R.* 234); and Roosa agt. The Saugerties and Woodstock Turnp. Co. (*Id.* 237.) Justice HARRIS held the contrary, and that a demurrer can be interposed to an answer, *only* when the answer contains new matter constituting a counter claim, and that a demurrer to an answer which does not contain a counter claim is a nullity. It will be seen by reference to the last two cases, that the learned justice places his opinion upon § 168, and he remarks in one of them, that " under the Code, as amended in 1852, there can be no demurrer to an answer unless it contain matter constituting a counter claim." In this view I cannot coincide. There is nothing in the section last referred to, which, in my judgment, compels us to such conclusion. It's language is permissive, and not imperative in form of expression, and I think the intention was, simply to relieve the plaintiff from the necessity of replying, where he wished to controvert upon the trial the new matter stated in the answer. It is not declared that he may not demur to the answer. In this way full scope may be given to the provisions of the section, without denying the plaintiff the right to bring the question of the sufficiency of the answer directly before the court by a demurrer, and thus avoid the confusion and inconvenience, not to say absurdity which I have attempted to point out as the consequence of the opposite view.

This brings us to the consideration of the question presented by the demurrer in the present case, and upon that question I entertain no doubt. The answer, most clearly, does not contain facts sufficient to constitute a defence.

Upon the death of Pell Teed the testator, one-sixth part of the real estate in question vested under his will in his son, Pell Teed, jr., subject to the widow's right of dower, which has

never been admeasured or set apart.  The plaintiff has become seized of the said one-sixth, as tenant in common with the other children, and entitled to ask for partition.  It is not alleged, nor does it anywhere appear, that the monies received by Pell Teed, jr., from the testator, his father, were paid to him by the latter by way of advancement.  The fact of notes and obligations having been given for it, is evidence to the contrary.  It is therefore an ordinary simple contract debt, due from Pell Teed, jr., to the estate of his father.

Upon the vesting of the said one-sixth of the lands in question in Pell Teed, jr., the lien of the judgment through which the plaintiff claims, attached, *eo instanti*, and her title relates back to that lien, and nothing is shown by the answer to impair it.

There must be judgment for the plaintiff on the demurrer, with leave to the defendants to amend the answer demurred to, on payment of costs.